# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOHNNIE EDWARD BANKS, JR.,<br><br>*Defendant.* | CASE NO. 3:13-cr-00003<br><br>MEMORANDUM OPINION<br>& ORDER<br><br>JUDGE NORMAN K. MOON |

This Court had considered multiple motions by Defendant Johnnie Edward Banks, Jr. for a reduction in his sentence, and issued a decision granting them in part and denying them in part. As a result, this Court reduced Defendant's term of incarceration from 188 to 148 months—a 40-month reduction. However, this Court also concluded that Defendant "had not established that his request for immediate release [was] warranted, or that any lesser sentence than 148 months' incarceration would satisfy the § 3553(a) factors." Dkt. 223 at 1.

Given the substantial number of filings Defendant submitted in support of a reduced sentence, this Court permitted Defendant to file a motion for reconsideration to the extent that he believed that the Court had not addressed a meritorious argument set forth in his prior motions. *Id.* at 13–14. Defendant has more than availed himself of the opportunity, filing various motions for reconsideration or filings in support of renewed requests for immediate release or a further sentence reduction. *See* Dkts. 224, 226, 227, 228, 229, 230, 232, 236, 237, 239. For the following reasons, the Court continues to conclude that the relevant § 3553(a) factors support imposition of a 148-month term of incarceration, and that no lesser sentence than 148 months would satisfy the relevant § 3553(a) factors. Defendant's motions for a further reduction in sentence are denied.

<u>Background</u>

In August 2013, Defendant pleaded guilty to distributing cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), with the benefit of a plea agreement. Dkts. 79, 80 (guilty plea form and plea agreement). In December 2013, the Court sentenced Defendant to a term of imprisonment of 188 months. Dkt. 112 (judgment).

As reflected by the presentence investigation report ("PSR"), the Court concluded that Defendant's total offense level was 31. Dkt. 146 at 7 (¶ 34). A two-level enhancement was applied because a dangerous weapon (a handgun) was possessed during drug transactions. And another two-level enhancement was applied for obstruction of justice because Defendant "recklessly created a substantial risk of death or serious bodily injury to another person" by fleeing, first in an SUV and then on foot, from law enforcement in July 2012. *Id.* at 5–7 (¶¶ 17, 26, 29). The Court also concluded that Defendant's criminal history category of V became VI on account of his designation as a career offender. Dkt. 146 at 11 (¶ 49); Dkt. 189 at 1–2; Dkt. 202 at 3. Defendant's criminal history included Virginia convictions for breaking and entering (2007) and manufacturing with intent to sell cocaine (2009). Dkt. 146 at 8–9. His advisory sentencing guideline range was 188 to 235 months' incarceration with the career offender enhancement. Dkt. 146 at 11 (¶ 49), 14 (¶ 71); Dkt. 189 at 2; Dkt. 202 at 3. The Court sentenced Defendant to 188 months' imprisonment, the low end of the guidelines, followed by four years' supervision. Dkt. 112.

Defendant filed numerous pro se motions for compassionate release and various other forms of relief. In addition, Defendant filed, through counsel, motions for compassionate release and supplemental filings seeking compassionate release. Dkts. 189, 190, 215, 216. The Warden denied Defendant's request. Dkt. 190-1; Dkt. 202 at 4.

This Court issued a decision granting in part and denying in part Defendant's motions for reduction in sentence filed through counsel. Dkt. 223. The Court reduced Defendant's sentence by 40 months, from 188 months to 148 months' incarceration. *Id.* at 1.

In support of that reduction in sentence, the Court concluded that Defendant presented an extraordinary and compelling reason for a reduction in sentence. Specifically, the guideline range that applied during Defendant's original sentencing, 188 to 235 months' incarceration, was based on his status as a career offender, and the Court sentenced him to 188 months' incarceration—the low end of the guideline range. However, it was undisputed that today Defendant would not be a career offender and that his guideline range would be 100 to 125 months, and thus the low end of the guidelines was 88 months less. The Court considered that the "gross disparity" between the sentencing laws to which Defendant was subject at the time of sentencing, and those in effect today, qualified as an extraordinary and compelling reason to support a reduced sentence under *United States v. McCoy*, 981 F.3d 271, 286 (4th Cir. 2020). *See* Dkt. 223 at 7–8.

After finding "extraordinary and compelling reasons" existed for a reduction in sentence, the Court further had to determine whether the applicable § 3553(a) factors also supported any reduction. *See United States v. Kibble*, 992 F.3d 326, 331 (4th Cir. 2021) ("Moreover, a district court may not grant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) without 'considering the factors set forth in section 3553(a) to the extent they are applicable"). Upon consideration of the § 3553(a) factors, the Court neither could agree that *no* reduction was appropriate, as the Government had argued, nor that Defendant's request for immediate release was appropriate. *See* Dkt. 223 at 9.

In particular, the Court was troubled by Defendant's "post-sentencing conduct," since he "ha[d] not been a model inmate." *Id.* The Court described those infractions in its prior decision and will lay them out here:

> In 2018, Banks was sanctioned for forging the signature of staff members; possessing homemade alcohol on the compound; engaging in disruptive behavior; and being absent from assignment.
>
> In 2019, Banks was sanctioned for engaging in disruptive conduct understood to be a bribe, and for making a 'sexual proposal/threat." That year, Banks also was found to have possessed a non-hazardous tool; been insolent to a staff member (twice); and destroyed property of $100 in value or less.
>
> And in 2020, Banks was sanctioned for bribing an official or staff member; masturbating in the presence of staff; threatening bodily harm to staff and refusing to obey an[ ] order and interfering with staff based on communications encouraging an intimate relationship.

*See* Dkt. 223 at 9–10 (cleaned up; internal citations omitted; spacing added).

The Court observed that Defendant's list of infractions "is as varied as it is lengthy," and discerned "an unmistakable thread that runs through a number of Banks' infractions which evidences, at best, contumacious behavior more indicative of recidivism than rehabilitation." *Id.* at 10. The Court considered most significant Defendant's infractions for threatening staff with bodily harm in September 2020 and making a "sexual proposal/threat" in 2019. *Id.* The Court also noted that "[l]ittle argument has been presented concerning rehabilitative efforts" by Defendant. *Id.* at 11. The Court concluded that, "[w]hile in some respects he is better positioned now than at his original sentencing (with respect to the sentencing guideline range), his position is worse with respect to his history and characteristics on account of his BOP infractions." *Id.* at 12. Taking all that into account as well as the other reasons set forth in this Court's earlier decision, the Court reduced Defendant's term of incarceration from 188 months to 148 months, a 40-month reduction. *Id.* at 13. The Court also found that "no lesser sentence than 148 months'

4

incarceration would satisfy the relevant § 3553(a) factors, including (but not limited to) the need to afford adequate deterrence." *Id.* According to the BOP website, Defendant's release date is now scheduled for February 2, 2024.

Presently at issue before the Court are Defendant's numerous requests for reconsideration and other supporting filings seeking a further reduction in sentence. *See* Dkts. 224, 226, 227, 228, 229, 230, 232, 236, 237, 239.

Statutory Framework

A court generally may not modify a term of imprisonment once the court has imposed sentence. 18 U.S.C. § 3582(c); *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021) (noting "the default position stated in 18 U.S.C. § 3582(c) is that a sentencing court 'may not modify a term of imprisonment once it has been imposed'"). However, a statutory exception allows the court, on a defendant's motion, to reduce the term of imprisonment if the court finds that "extraordinary and compelling reasons warrant such a reduction," after the defendant has asked the Bureau of Prisons and fully exhausted administrative appeals following denial of the request. 18 U.S.C. § 3582(c)(1)(A)(i). A defendant seeking relief under § 3582(c)(1)(A) has the burden of establishing that compassionate release is warranted. *United States v. Owens*, No. 7:08-cr-31, 2021 WL 4975273, at *2 (W.D. Va. Oct. 26, 2021). If a defendant has shown that extraordinary and compelling reasons support a sentence reduction, the Court must consider the applicable factors under 18 U.S.C. § 3553(a) to determine whether a reduction is appropriate. *See* 18 U.S.C. § 3582(c)(1)(A). A district court has "broad discretion in conducting this analysis." *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021).

Exhaustion of Administrative Remedies

The "threshold requirement" in § 3582(c)(1)(A) that a defendant exhaust administrative remedies is a "non-jurisdictional claim-processing rule," which "may be waived or forfeited" by the Government. *United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021). There is no dispute in this case that Defendant has exhausted his administrative remedies. Dkt. 190, 190-1; Dkt. 202 at 4; Dkt. 223 at 3.[1]

Extraordinary & Compelling Reasons

The Fourth Circuit has held that "district courts are empowered to consider *any* extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (internal quotation marks and citation omitted). For the reasons set forth in its prior decision, this Court concluded that Defendant has shown the existence of extraordinary and compelling reasons for a sentence reduction, namely that the difference in the applicable advisory sentencing guideline range was substantial, constituting the sort of "gross disparity" between sentences and later changes of sentencing laws that the Fourth Circuit has concluded qualifies as extraordinary and compelling reasons supporting a sentence reduction under *McCoy*. *See* Dkt. 223 at 3–8. The Court will proceed to consider whether, in Defendant's subsequent filings, he has raised any other extraordinary and compelling reason for a reduction in sentence. *See McCoy*, 981 F.3d at 284. He has not.

1. *COVID-19*

Defendant argues in a perfunctory manner that the number of COVID-19 cases have soared, and that mostly inmates who have been vaccinated were affected. *See* Dkt. 224 at 1.

---

[1] The Government has not filed any response to Defendant's motions for reconsideration and therefore has not asserted any defense of exhaustion with respect to any arguments raised in any of Defendant's later filings.

However, Defendant has not elaborated any further on the point. "[I]n the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release [under § 3582(c)(1)(A)] when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Colleton*, No. 21-6015, 21-6021, 2022 WL 18500, at *1 (4th Cir. Jan. 3, 2022) (unpublished, per curiam) (citation omitted). Here, Defendant has not attempted to argue, much less demonstrated, any particularized susceptibility or particularized risk of contracting the disease. Nor has he advanced any reason that COVID-19 presents an extraordinary and compelling reason for a reduced sentence.

2.    *Specific Offense Characteristics*

Defendant appears to also take issue with another aspect of his advisory sentencing guideline range, namely the application of two specific offense characteristics. Dkt. 226 at 2–3. Defendant appears to challenge imposition of a two-level increase "because a dangerous weapon (including firearm) was possessed," Dkt. 146 at 6 (¶ 26) ("PSR"); and the imposition of another two-level increase for obstruction of justice because "[d]efendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing a law enforcement officer; therefore," *id.* at 6–7 (¶ 29). Defendant's argument in either respect is not persuasive, nor would either constitute an "extraordinary and compelling" reason for a further reduction in sentence.

Defendant argues that the "burden of proof" was not satisfied on the dangerous weapon enhancement, that the enhancement should have specified a "time, date and location," and that it merely relied on informants who were not credible. Dkt. 226 at 2. The Guidelines authorize a two-level increase to the offense level "[i]f a dangerous weapon (including a firearm) was

possessed." U.S.S.G. § 2D1.1(b)(1). The Guidelines' comments explain that "[t]he enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1 cmt. n.11(a). The Government bears the burden to prove by a preponderance of the evidence that "the weapon was possessed in connection with drug activity that was part of the same course of conduct or common scheme as the offense of conviction," and "the Government is entitled to rely on circumstantial evidence to carry its burden." *United States v. Manigan*, 592 F.3d 621, 629 (4th Cir. 2010). "[T]he burden of showing something by a preponderance of the evidence … simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence." *Id.* at 631. The PSR had stated that "[c]o-defendants reported that Banks started carrying a handgun during drug transactions after he was robbed." PSR ¶ 26. The PSR further stated that "Alonzo McDonald had reported that Banks and an unindicted co-conspirator traveled to New Jersey to purchase cocaine base for $15,000, but ended up victims in an attempted robbery," and that, "[f]ollowing this event, McDonald saw Banks with either a .9mm or a .380 handgun." PSR ¶ 19. Defendant did not object to this (or any other) portion of the PSR, *see* PSR at p. 18, and has not introduced any contrary evidence or argument besides saying that the burden of proof was not met and the report of his gun possession was by someone who was not credible (again, without further elaboration). Defendant has not shown any error in the application of the two-level enhancement, much less shown that any error in this regard constitutes an "extraordinary and compelling" reason for a reduced sentence.

Defendant also appears to challenge the application of the two-level enhancement for obstruction of justice. *See* Dkt. 226 at 2. The PSR provided that Defendant "recklessly created a substantial risk of death or serious bodily injury in the course of fleeing from a law enforcement

officer; therefore, two levels are added," pursuant to U.S.S.G. § 3C1.2. *See* PSR ¶ 29; *id.* ¶ 17

(describing July 25, 2012, incident where Defendant fled from police in black SUV followed by

police pursuit). Regardless of any argument that might have been made that such conduct did not

support imposition of the enhancement, the Court notes that Defendant did not file an objection

to this or any other provision of the PSR. *See* PSR at p. 18. Moreover, Defendant concedes that

his advisory guidelines today would be 100–125 months, which was the range this Court applied

when it reduced Defendant's sentence. *See* Dkt. 226 at 2 ("It's undisputed today [that] Mr.

Banks['] guidelines would be 100–125 months …."); *id.* at 4 ("my guidelines today are 100–125

months"); *id.* at 7 (same). Moreover, any argument Defendant raises in this respect would fall

short of constituting an "extraordinary and compelling" reason supporting a sentence reduction.

And further still, in this case the Court concludes that the § 3553(a) factors are determinative in

counseling any additional reduction in sentence. *See High*, 997 F.3d at 186–87.[2]

## Section 3553(a)

The fact that "extraordinary and compelling reasons" exist for a sentence reduction does

not, without more, require a district court to reduce a defendant's sentence. The Court must

determine that the applicable § 3553(a) factors also support a reduction in sentence. *See Kibble*,

992 F.3d at 331 ("Moreover, a district court may not grant a sentence reduction under 18 U.S.C.

§ 3582(c)(1)(A) without 'considering the factors set forth in section 3553(a) to the extent that

---

[2] To the extent Defendant argues that any continuing effect of the "residual clause"—
presumably that of the Sentencing Guidelines, *e.g.*, Dkt. 226 at 2–3—supports imposition of a
further sentence reduction, that argument is without merit. The relevant guidelines provisions
that supported two-level enhancements for possession of a dangerous weapon and obstruction of
justice that Defendant challenges here do not have a "residual clause." U.S.S.G. § 2D1.1(b)(1),
§ 3C1.2. The Court already afforded Defendant the benefit of the fact that today, he would not be
considered a "career offender" and so his current sentencing guideline range would be 100–125
months. *See* Dkt. 223 at 8.

they are applicable'"); *see also United States v. Spencer*, 521 F. Supp. 3d 606, 610 (E.D. Va. 2021) ("The Defendant is correct that he would not receive the career offender enhancement under U.S.S.G. § 4B1.1, if he were sentenced today. That alone, however, does not automatically entitle the Defendant to a reduction in sentence."); *United States v. Riggleman*, No. 5:11-cr-124, 2021 WL 6126053, at *3 (S.D. W. Va. Dec. 28, 2021) (denying motion for reduced sentence despite fact that defendant was no longer a career offender when "the § 3553(a) factors strongly counsel against release"). Those § 3553(a) factors include: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed education or vacation training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a).

Defendant appears to argue that it was inappropriate for this Court to consider disciplinary actions he incurred while at BOP in his resentencing. *See* Dkt. 226 at 4 ("Disciplinary actions do not justify, justice being served when the sentencing was before any incarceration."). Defendant is mistaken. Defendant's post-sentencing conduct—including both positive conduct in terms of his steps towards rehabilitation, as well as negative conduct in terms of infractions while in custody—all can be considered by the Court in deciding whether a reduction of Defendant's term of incarceration is warranted. *See, e.g.*, *Concepcion v. United States*, 142 S. Ct. 2389, 2396 (2022) (holding that a district court "may consider … changes of fact (such as behavior in prison) in adjudicating a First Step Act motion"); *id.* at 2400 ("district courts in resentencing proceedings frequently consider evidence of violence and rule breaking in

10

prison").

Defendant also challenges, on the merits, this Court's reliance on his BOP disciplinary infractions and argues that he does not pose any threat to the community. *See* Dkt. 226 at 5–6; Dkt. 227 at 1–2. Notably, however, he has not contested that he committed any of the charged violations upon which this Court previously relied. *See* Dkt. 223 at 9–11. Rather, Defendant simply characterizes them as non-violent or as not involving drugs. Dkt. 224 at 1; Dkt. 226 at 5; Dkt. 227 at 1–2. But Defendant offered no more than generalized argument that he wasn't involved in any violent infractions, and he has not attempted to explain, much less substantiate, how any of the offenses previously described did not involve violence or the threat of violence or should otherwise be considered in less serious light. *See, e.g.*, Dkt. 224 at 1 ("Mr. Banks hasn't had any violent Incident Report and has served any sanctions received … for any Incident he has received."); Dkt. 227 at 2 ("There isn't anything in my Institution Infraction [sic] that can prove or anything near me being a threat to the community or anyone in the community.").

It wouldn't have been difficult for Defendant to focus on the several infractions that were most significant in this Court's prior ruling. This Court had identified the most significant infractions as his "infractions for threatening staff with bodily harm in September 2020, and making a sexual proposal/threat in September 2019." Dkt. 223 at 10. Defendant faults the records of his institutional infractions for having "no descriptions of them," Dkt. 226 at 5, but this Court already took that relative lack of detail into account in considering the relevant § 3553(a) factors, Dkt. 223 at 10. Again, notwithstanding Defendant's many filings, he has not attempted to offer any substantial contrary description of any of his infractions.[3] In any event,

---

[3] Defendant also appears to argue that he "suffered from torture, negligence, discrimination and cruel and unusual punishment" on account of his status as a "high-risk" inmate. *See* Dkt. 226 at 6; Dkt. 227 at 2 (similar describing "harsh treatments"). However, again

Defendant is the one seeking relief from this Court and asserting that a *further* reduction in sentence is justified. Moreover, and not insignificantly, Defendant has not disclosed that he had another disciplinary hearing in early 2022 for an infraction in late 2021, for interfering with staff—*i.e.*, a similar infraction of encouraging an intimate relationship with a female staff member. The Court continues to be troubled by the recency of Defendant's violations and the repetitive nature of them. Notwithstanding his attempt to minimize it as non-violent, Defendant's disciplinary record while he has been incarcerated includes serious violations, especially the threats and sexual harassment to BOP staff. *United States v. Davie*, No. 1:09-cr-11, 2022 WL 1442248, at *2–3 (W.D. Va. May 6, 2022) (denying defendant's motion for sentence reduction in part because court was "particularly troubled by the numerous violent infractions [while incarcerated], including assault and sexual harassment of BOP staff"). A defendant's "behavior while in BOP custody is also an important indicator of whether he remains a danger to the community for compassionate release purposes." *United States v. Jackson*, No. 3:05-cr-184, 2022 WL 2977333, at *6–7 (S.D. W. Va. July 27, 2022). And in Defendant's case, he has been "sanctioned repeatedly throughout his term of incarceration, without any sign of improvement." *See id.* At bottom, nothing in Defendant's numerous filings has altered in any way this Court's conclusion that "an unmistakable thread … runs through a number of [Defendant's] infractions, which evidences, at best, contumacious behavior more indicative of recidivism than rehabilitation." Dkt. 223 at 10.

Defendant has presented additional argument concerning one factor about which this Court had relatively little information in the prior filings—evidence of his rehabilitative efforts

---

he has not elaborated with any specifics. These arguments are vague and wanting in any factual detail. They support neither a finding of extraordinary and compelling circumstances nor any reduction in sentence.

while in custody. *See, e.g.*, Dkt. 232 at 1–2; Dkt. 232-1 (records of educational coursework that he completed); *see also* Dkt. 226 at 6. "A district court at resentencing may consider evidence of the defendant's postsentencing rehabilitation," and such evidence may support imposition of a lesser sentence. *Pepper v. United States*, 562 U.S. 476, 481 (2011); *accord United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021) (holding that, in ruling on First Step Act motion, district court "must also at least weigh [defendants'] conduct in the years since their initial sentencings"). As this Court previously stated in the prior briefing in support of a reduced sentence, little argument had been presented concerning Defendant's rehabilitative efforts. Dkt. 223 at 11.

Defendant argues that he participated in programs showing positive improvement and development of skills that will lead to his greater success in the community following release from incarceration. Dkt. 232 at 1. Defendant contends that he has "grown as a person and continue[s] to seek knowledge so [he] can be productive in the society," citing a "host of programs" he completed, showing that he is "striv[ing] towards change." Dkt. 227 at 2. On the one hand, Defendant's records show some involvement in and completion of educational coursework between 2015 and 2021. Dkt. 232-1 at 1. He also completed an anger management course, *id.* at 4, in addition to various vocational courses, *id.* at 3, which shows some rehabilitative efforts by Defendant. On the other hand, the Court notes that Defendant didn't avail himself of such opportunities as fully as he might have. For instance, for several years Defendant took few if any educational courses: 2013 (none); 2014 (none); 2015 (one); 2016 (none); 2017 (two). *Id.* at 1. To be sure, Defendant took more courses in 2020 and 2021. However, nine of them met for just one hour. *Id.* at 3. Simply put, any efforts Defendant has undertaken toward rehabilitation are to be commended, but they fall short of any showing that a

13

*further* reduced sentence (below 148 months) is warranted. *See, e.g.*, *United States v. Stewart*, No. 3:15-cr-103, 2022 WL 2070616, at *4 (E.D. Va. June 8, 2022) (writing that taking educational courses and employment in prison system are "commendable rehabilitation efforts" but "do not outweigh the seriousness of the offense or Stewart's criminal history"). The Court still must consider those efforts in light of Defendant's disciplinary record, which was lengthy. On balance, the Court thus concludes that Defendant's history and characteristics weigh against a further reduction in sentence. *Compare Martin v. United States*, No. 2:17-cr-25, 2022 WL 2541920, at *4 (E.D. Va. July 7, 2022) (holding that, "even if Petitioner had a spotless disciplinary record and a better commitment to rehabilitation, evidence of rehabilitation and adherence to court-imposed conditions alone do not warrant compassionate release").

As previously stated, Defense counsel cited authority to support a conclusion that Defendant has presented extraordinary and compelling reasons for a sentence reduction based on the decreased guideline range. Dkts. 215, 216. In his recent motions, Defendant also appears to contend that he was likewise entitled to a sentence at the low end of the revised guideline range (100 months), because this Court previously had sentenced him to the low end of the prior higher guideline range (188 months). *See, e.g.*, Dkt. 226 at 1 (arguing that "[t]he total amount of months [reduction] that is warranted is 88 months"); *id.* at 7 (arguing that he "is warranted 88 months['] reduction to place him in the respected guidelines"); Dkt. 228 at 1 (similar). However, as this Court previously concluded, such authority is also distinguishable largely on account of Defendant's less-than-exemplary record during incarceration. In *Shaw*, Chief Judge Urbanski applied the same percentage downward variance from the low end of a subsequently reduced guideline range in granting the defendant's motion for compassionate release. However, in doing so, Chief Judge Urbanski noted that Shaw only had one "incident of misconduct on his BOP

Disciplinary Records" that "involved no violence or drugs, and his BOP disciplinary record is otherwise clean." *Shaw*, 2021 WL 3007266, at *6. In *Brown*, this Court found extraordinary and compelling reasons to reduce a defendant's sentence when under current sentencing law the defendant would not be sentenced as a career offender. *See United States v. Brown*, No. 3:15-cr-17, 2021 WL 2389881, at *10 (W.D. Va. June 11, 2021). But there, this Court noted that "[s]ince his incarceration in 2015, Brown has maintained a clean BOP disciplinary record," had completed programs for anger management and drug education, and "BOP rate[d] his recidivism risk level as low and classifie[d] his security risk as low." *Id.* at *11. And even in *Brown*, where the defendant presented a stronger case for rehabilitation, the Court found that the § 3553(a) factors did not warrant immediate release. *Id.* at *11. The other cases relied upon by Defense counsel presented circumstances in which the defendants demonstrated rehabilitation and better disciplinary records. *United States v. Trice*, No. 7:13-cr-34, 2021 WL 402462, at *3–4 (W.D. Va. Feb. 3, 2021) (Conrad, J.) (granting immediate release based on subsequent change in sentencing law rendering defendant no longer a career offender, when the defendant "incurred only one institutional infraction while incarcerated and has completed the Residential Drug Abuse Program"); *United States v. Stuart*, 5:92-cr-114, 2020 WL 7232074, at *4 (E.D.N.C. Dec. 8, 2020) (granting immediate release, noting "[a]lthough the BOP has sanctioned [the defendant] for 11 prohibited acts, defendant committed the last prohibited act more than nine years ago").

Defendant also writes of his family ties as supporting a reduction in sentence. For instance, Defendant writes that he has been in "consistent contact with his family" and is "being a father to his children every[] way he can." Dkt. 226 at 6. His youngest son has just turned 14 years old, and he regrets missing out on 9 years of his son's life. Dkt. 227 at 4. Defendant's daughter has graduated. *Id.* And Defendant states that he has "become closer to [his] mother"

since he was incarcerated. Dkt. 227 at 3; *see also id.* (requesting to be "reunite[d] with his mother and children"). And he argues that his family has been supportive and will help him following his release from incarceration. *See, e.g.*, Dkt. 232 at 1. While such family ties and support no doubt have been invaluable to Defendant while incarcerated and will also help facilitate his adjustment upon his eventual release, Defendant has not presented any factors concerning his family circumstances that would constitute extraordinary and compelling circumstances or any additional reduction in his term of incarceration. *See, e.g.*, *United States v. Fulton*, No. 3:17-cr-688, 2022 WL 4133344, at *6 (D.S.C. Sept. 12, 2022) (holding that, "although the court is sympathetic to his desire to be with his family, the defendant's case presents no unusual factors with regard to family relationships such that an order of immediate release is appropriate").

Defendant continues to argue, as his counsel did previously, that a reduction in sentence is warranted on account of his relative youth (he was in his early twenties) when he committed the criminal conduct that underlies his conviction. Dkt. 227 at 3; Dkt. 189 at 14. While that fact does somewhat weigh in Defendant's favor, the Court previously took that into account in reducing his sentence to 148 months. Dkt. 223 at 12. And, as the Court stated then, Defendant's BOP disciplinary record renders less persuasive an argument that his criminal conduct was largely due to youthful errors of judgment and that he has learned his lesson.

The Court also has considered the Government's argument that Defendant remains at a high risk for recidivism. Dkt. 202 at 26. To be sure, as previously described, such concerns over risks of recidivism are offset to some extent given that Defendant will upon release still be on supervised release for a period of four years. *See* Dkt. 112 at 2. However, again, this Court is not confronted with a defendant with an exemplary track-record in prison. Defendant has racked up

16

numerous, and recent, infractions recited above, including ones of particular concern involving threats, sexual harassment and/or improper sexual advances toward BOP officials. Recidivism remains an acute concern, which bears on several of the § 3553(a) factors. 18 U.S.C. § 3553(a) (sentence imposed must "afford adequate deterrence to criminal conduct," and "protect the public from further crimes of the defendant").

At bottom, the Court was presented with the following situation. Defendant's guideline range was reduced significantly after his sentence (now 100–125, when it was 188–235 months), and caselaw establishes that such gross disparities in sentencing can constitute extraordinary and compelling reasons for a sentence reduction. The Court took that into account, and concluded that while "in some respects [Defendant] is better positioned now than at his initial sentencing (with respect to the sentencing guideline range), his position is worse with respect to his history and characteristics on account of his BOP infractions." Dkt. 233 at 12–13. The Court, weighing those factors as well as the others set forth in this Court's earlier decision, concluded that a 148-month sentence was sufficient, but no greater than necessary to fulfill the § 3553(a) factors, thus granting Defendant a 40-month reduction in sentence. *Id.* at 13–14.

Defendant has had ample opportunity and submitted many filings seeking a further reduction in sentence. However, Defendant has not submitted any other issue that would constitute an extraordinary and compelling reason that would support a reduction in sentence. And, even if he had (and he has not), he has not presented any arguments or evidence that would support a different (lesser) sentence under the § 3553(a) factors. The Court continues to find that no lesser sentence than 148 months would fulfill the applicable § 3553(a) factors. Taking into account any updated information of rehabilitative efforts as well as disciplinary infractions, the Court finds that Defendant's record while in custody continues to present a picture of Defendant

17

as a far-from-model inmate, with numerous serious and recent disciplinary infractions, which show little if any signs of abetting. Defendant's rehabilitative efforts, though commendable, fail to demonstrate a significant and sustained record of effort toward rehabilitation. They do not counterbalance the negative aspects of his record in prison, nor support a lesser sentence. The sentence the Court imposes must be consistent with the goals of both specific and general deterrence and must account for Defendant's history and characteristics. The Court continues to find those are the most significant § 3553(a) factors. The other factors, including the nature and circumstances of the offense, the need for the sentence imposed to reflect the seriousness of the offense, and to promote respect for the law, have all either been considered as set forth above with respect to changed advisory guidelines, or are comparably positioned at this point to what they were at Defendant's original sentencing, as well as when this Court already reduced his sentence to 148 months.

<u>Request for Home Confinement</u>

Defendant argues that he "now qualifies for home confinement under the First Step Act," on account of his "participation with the First Step Act programs," and so argues that "immediate release is warranted." *See* Dkt. 226 at 1; *see also id.* at 7 (seeking "parole with a home detention address"); Dkt. 229 at 1 (seeking release "on home confinement"). This Court lacks authority to convert a custodial sentence to one of home confinement. *United States v. Simon*, No. 20-6701, 20222 WL 337126, at *1 (4th Cir. Feb. 4, 2022) (unpublished, per curiam). To the extent Defendant argues that the Court should grant his motion for compassionate release and impose home confinement as a term of supervised release, *see id.*, the Court also denies such request. Defendant has not established extraordinary and compelling reasons for a reduction in sentence pursuant to § 3582(c)(1)(A), below 148 months' incarceration. The Court concludes that the

18

relevant § 3553(a) factors are satisfied by the imposition of a 148-month sentence, and that any lesser sentence would not satisfy those factors. *See United States v. Dear*, No. 1:19-cr-47, 2022 WL 6727329, at *1 (W.D. Va. Sept. 7, 2022) (denying request for home confinement where defendant had not stated sufficient reasons to support such relief).[4]

## Conclusion

For these reasons, and pursuant to 18 U.S.C. § 3582(c)(1)(A), the Court **has found** that extraordinary and compelling reasons supported Defendant's request for a sentence reduction, and that the § 3553(a) factors supported a reduction in sentence from 188 to 148 months, which this Court already imposed. *See* Dkt. 223. The Court has further considered Defendant's motions for reconsideration seeking a further reduction in sentence, and, upon consideration of the § 3553(a) factors, the Court **finds** that the § 3553(a) factors are served by a term of imprisonment of 148 months, a sentence that is sufficient but no greater than necessary to fulfill the § 3553(a) factors. The Court further **finds** that no lesser sentence than 148 months' incarceration would satisfy the relevant § 3553(a) factors, including (but not limited to) the need to afford adequate deterrence. The Court has already reduced Defendant's sentence to a term of 148 months' incarceration, and Defendant's sentence is unchanged by this opinion.[5]

---

[4] To the extent Defendant challenges the execution of his sentence or calculation of his term of incarceration, such as by arguing the BOP incorrectly calculated time credits under the First Step Act, Dkt. 224 at 1; Dkt. 230 at 1; Dkt. 236 at 1, such relief requested may be sought only through a § 2241 petition filed against the warden of the prison where the prisoner is housed at the time the petition is filed. *United States v. Miller*, 871 F.2d 488, 489–90 (4th Cir. 1989); *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

[5] The Court will also deny Defendant's motion to address the Court in person, Dkt. 229, as the Court has fully considered his arguments set forth in his various filings, and a request for a modification in sentence is not a plenary sentencing. *See Chavez-Meza v. United States*, 138 S. Ct. 1959, 1967 (2018) ("a sentence modification is 'not a plenary resentencing proceeding'") (citation omitted); *United States v. Lawrence*, 1 F.4th 40, 49 (D.C. Cir. 2021) (no absolute right to allocution in First Step Act resentencing). The Court will also terminate as moot Defendant's motion for mandamus relief, as this Court has ruled upon Defendant's compassionate release

For these reasons, the Court will **DENY** Defendant's motions for reconsideration and/or motions for compassionate release. Dkts. 224, 226, 227, 228, 229, 230, 232, 236, 237, 239.

It is so **ORDERED**.

The Clerk of Court is directed to send this Order to Defendant, all counsel of record and to the U.S. Marshals Service.

Entered this ___20th___ day of October, 2022.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

---

motions. Dkt. 239.